IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Julia Phillips, | : | |
| Relator, | : | |
| | : | No. 23AP-606 |
| v. | : | |
| | : | (REGULAR CALENDAR) |
| Ohio Public Employees Retirement System of Ohio, | : | |
| | : | |
| Respondent. | : | |
| | : | |

D E C I S I O N

Rendered on September 30, 2025

**On brief:** *Malyuk McDaniel Kasper, LLC, Eric McDaniel,* and *Matthew Kasper*, for relator. **Argued**: *Eric McDaniel.*

**On brief:** *Dave Yost*, Attorney General, *Henrique A. Geigel,* and *Lisa A. Reid*, for respondent. **Argued**: *Lisa A. Reid.*

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LELAND, J.

{¶ 1} Relator, Julia Phillips, has filed an original action requesting this court issue a writ of mandamus ordering respondent, Ohio Public Employees Retirement System of Ohio ("OPERS"), to vacate its order denying disability benefits and to issue a new order granting said disability benefits.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends that this court deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed objections to the magistrate's decision arguing the magistrate erred in (1) rendering inaccurate findings of fact, (2) denying relator's motion for discovery, (3) failing to respond to all of relator's arguments, (4) finding OPERS issued valid decisions, (5) finding OPERS is not required to prove it provided all documentation to its medical reviewer, and (6) finding OPERS's decision to deny benefits was not an abuse of discretion.

{¶ 4} Under Ohio law, " '[m]andamus is the appropriate remedy to challenge a decision by OPERS, because there is no statutory right to appeal.' " *Ruf v. Ohio Pub. Emps. Retirement Sys.*, 2021-Ohio-4389, ¶ 23 (10th Dist.), quoting *State ex rel. Domhoff v. Ohio Pub. Emps. Retirement Sys. Bd.*, 2014-Ohio-3688, ¶ 12. In bringing such an action, relator " 'must establish a clear legal right to the requested relief, a clear legal duty on the part of OPERS to provide that relief, and the lack of an adequate remedy in the ordinary course of the law.' " *Id.*, quoting *Domhoff* at ¶ 13. In order to show he or she is entitled to the requested writ, a relator "must demonstrate that OPERS abused its discretion." *Id.* at ¶ 24, citing *Domhoff* at ¶ 14. Further, "[i]n the context of a mandamus action, OPERS abused its discretion if it entered an order that was not supported by some evidence." *Id.*, citing *State ex rel. Powell v. Ohio Pub. Emps. Retirement Sys.*, 2021-Ohio-4030, ¶ 12.

{¶ 5} Several of relator's objections are interrelated and will be considered jointly. We initially address relator's objections to the magistrate's findings of fact Nos. 8 and 15. Specifically, relator challenges the magistrate's findings that "OPERS sent claimant's medical records to its third-party administrator," and that Dr. Robert Ferguson "also indicated that he received the medical records sent to [UMass Chan Medical School aka "Commonwealth Medicine" or "CWM"] by OPERS." (Appended Mag.'s Decision at ¶ 39.) Relator argues the Ohio Administrative Code requires OPERS to send all such documentation "to the reviewing physician, and there is no proof this occurred; only that some documentation was supplied." (Relator's Objs. at 9.) Similarly, relator challenges the magistrate's findings that "OPERS forwarded the appeal documents to CWM and Dr. Ferguson for a new medical review," and that "Dr. Ferguson noted his receipt and review of the medical records sent to CWM by OPERS." (Appended Mag.'s Decision at ¶ 46.) According to relator, there is no statement or information by Dr. Ferguson or Dr. Maurice Mast of receiving "all evidence." (Relator's Objs. at 11.) In a related objection,

relator argues the magistrate erred in finding OPERS is not required to prove it provided all documentation to its medical reviewer.

{¶ 6} The magistrate addressed relator's contention that OPERS abused its discretion in failing to show it complied with the requirement of giving the medical reviewer "all evidence" in accordance with Adm.Code 145-2-23(C)(1). Specifically, the magistrate found relator did not "show that OPERS failed to forward all medical evidence to the medical reviewer, Dr. Ferguson, or that Dr. Ferguson did not review all relevant documentation." (Appended Mag.'s Decision at ¶ 59.) The magistrate noted relator "fails to point to any statute or rule that requires OPERS to provide proof that it forwarded the medical record to the medical reviewer," nor could relator point to any authority requiring the medical reviewer to "list all additional evidence received or necessarily comment on the additional evidence." (Appended Mag.'s Decision at ¶ 59.)

{¶ 7} On review, we find no error with those determinations. Adm.Code 145-2-21(B)(3) states in part: "Upon receipt of a complete disability application . . . the retirement system's medical consultant(s) shall review all such documentation and prepare a recommendation to the board." Adm.Code 145-2-23(C)(1) states in part: "After submission of any additional medical evidence . . . all evidence shall be reviewed by the medical consultant(s) who shall recommend action for concurrence by the board."

{¶ 8} OPERS maintains, and we agree, neither the rule nor the statutes mandate that OPERS "affirmatively prove" transmission of medical records to Drs. Ferguson and Mast. (Respondent's Memo in Opp. to Relator's Objs. at 18.) Nonetheless, we note the record in this case contains a notation from CWM and its examining physician, Dr. Ferguson, indicating "Medical records sent to CWM by OPERS." (Certified Record ("C.R.") at 197.) Further, as noted by OPERS, Dr. Ferguson's "Clinical Overview" provided a summary of the records he reviewed. (C.R. at 198-99.) In general, "[w]here nothing in the record indicates procedural irregularity, a presumption of regularity attaches to administrative agency proceedings." *Arnold v. Ohio Adult Parole Auth.*, 2011-Ohio-4928, ¶ 14 (10th Dist.), citing *Freeman v. Ohio Dept. of Human Servs.*, 1995 Ohio App. LEXIS 5472 (10th Dist. Dec. 14, 1995), citing *State ex rel. Ohio Bldg. Restoration, Inc. v. Indus. Comm.*, 64 Ohio St.3d 188, 189 (1992); *T. Marzetti Co. v. Doyle*, 37 Ohio App.3d 25, 29 (10th Dist. 1987).

{¶ 9} As also observed by the magistrate, "neither OPERS nor Dr. Ferguson were under any duty to list all of the evidence received or reviewed." (Appended Mag.'s Decision at ¶ 62.) *See, e.g., State ex rel. Marchiano v. School Emps. Retirement Sys.*, 2009-Ohio-307, ¶ 23 ("SERS [School Employees Retirement System] has no duty to specify the evidence it relied upon and explain its reasons for denying [the appellant's] application" for disability retirement benefits.); *State ex rel. Cydrus v. Ohio Pub. Emps. Retirement Sys.*, 2010-Ohio-5770, ¶ 17, citing *Marchiano* at ¶ 23 ("the retirement board had no duty under statute or administrative rule to specify the evidence it relied upon or to explain its reasons" in terminating disability retirement benefits). Nor does due process require "a more detailed retirement board decision." *Cydrus* at ¶ 25, citing *State ex rel. VanCleave v. School Emps. Retirement Sys.*, 2008-Ohio-5377, ¶ 23 (noting "[t]his court has already rejected a similar claim that the School Employees Retirement System had a duty based on procedural due process to identify the evidence it relied upon and to briefly explain its reasons for denying disability-retirement benefits"). *Id.* Accordingly, " '[a]lthough it may be preferable from a policy standpoint that a retirement board explain its reasoning for its decision,' " under Ohio's existing statutes "there is no duty to do so." *Marchiano* at ¶ 23, quoting *VanCleave* at ¶ 27.

{¶ 10} Relator further contends the magistrate erred by denying her objection to the certified record and motion for discovery filed April 30, 2024. Relator argues her motion before the magistrate asserted that OPERS's certified record filing was incomplete, "as it did not contain all evidence" in the possession of OPERS. (Relator's Objs. at 12.) Relator argues the motion requested permission to perform discovery "on the topics of evidence not provided in the certified record," which relator maintains includes proof of what documentation was submitted to Drs. Ferguson or Mast, and information "on whether the board actually issued a final decision." (Relator's Objs. at 12-13.) Relator asserts OPERS "has internal programs and processing where it can provide proof of what was supplied to CWM (Dr. Ferguson), and/or Dr. Mast (via email, messaging, and/or facsimile)." (Relator's Objs. at 14.)

{¶ 11} In response, OPERS argues relator's objection to the certified record and discovery motion were adjudicated by the magistrate in an interlocutory order, and relator

did not move to set aside that order under Civ.R. 53(D)(2)(b).  OPERS argues, therefore, relator's objection to the certified record and her request for discovery are untimely.

{¶ 12}  The record indicates that relator, on November 27, 2023, filed an "objection to respondent's certified record."  Further, on January 23, 2024, relator filed a motion for an order to allow her to pursue discovery.  On February 6, 2024, OPERS filed a motion to strike relator's motion for order to pursue discovery.  On April 30, 2024, the magistrate issued an order finding relator's objection to the certified record "without merit."  (Apr. 30, 2024 Mag.'s Order at 1.)  Further, the magistrate's order denied OPERS's motion to strike relator's motion for order to pursue discovery and denied relator's motion for order to allow relator to pursue discovery.  (Apr. 30, 2024 Mag.'s Order at 1.)

{¶ 13}  Civ.R. 53(D)(2)(b) states in part: "Any party may file a motion with the court to set aside a magistrate's order.  The motion . . . shall be filed not later than ten days after the magistrate's order is filed."  As noted by OPERS, this court has held that "[t]he plain text of Civ.R. 53(D) distinguishes between a 'Magistrate's order' and a 'Magistrate's decision.' " *State ex rel. Concerned Ohio River Residents v. Mertz*, 2022-Ohio-3211, ¶ 6 (10th Dist.).  In this respect, the " 'set-aside' procedure" provided by Civ.R. 53(D)(2)(b) "is different than the procedure for challenging a magistrate's decision, which is governed by *subsection (D)(3)(b) of Civ.R. 53*."  (Emphasis in original.)  *Id.*  Under the facts in *Mertz*, the respondents filed objections to a magistrate's order denying a motion to dismiss, but did not file a motion to set aside the order within the ten-day period required under Civ.R. 53(D)(2)(b).  This court concluded "respondents have improperly and untimely filed objections to a magistrate's order, and have failed to file a timely motion to set aside that order as required under Civ.R. 53."  *Id.* at ¶ 12.

{¶ 14}  Here, as noted by OPERS, relator did not move to set aside the magistrate's discovery order of April 30, 2024 under Civ.R. 53(D)(2)(b) but, instead, seeks to challenge that order by way of objections to the magistrate's decision.  On review, we agree with OPERS that relator has untimely filed objections to a magistrate's order.

{¶ 15}  However, even had relator filed a timely motion to set aside the order, we would find no error by the magistrate in denying relator's request to pursue discovery in the context of a mandamus proceeding "challenging a retirement system's denial of disability-retirement benefits, [where] the applicable inquiry is whether the retirement

system abused its discretion in denying the benefits." *Marchiano*, 2009-Ohio-307, at ¶ 25-27 (reviewing court did not err in denying relator's request for limited discovery). *See also State ex rel. Davis v. School Emps. Retirement Sys.*, 2008-Ohio-4719, ¶ 22 (10th Dist.) (trial court did not err in denying request to conduct limited discovery in mandamus action against retirement board as "the determination of whether SERS abused its discretion in denying disability retirement benefits is limited to consideration of evidence contained in the record"); *State ex rel. Moorhead v. Bd. of Ohio Hwy. Patrol Retirement Sys.*, 2014-Ohio-2499, ¶ 4 (10th Dist.) (denying relator's request for discovery "because the sole issue for determination" in a mandamus action is whether the retirement board "abused its discretion when it denied relator's disability application").

{¶ 16} Relator also objects to the magistrate's finding that OPERS issued "a valid 'final' denial decision." (Relator's Objs. at 17.) Relator argued before the magistrate that no OPERS board meeting occurred between relator's appeal and the "purported" final decision, and relator's objection challenges the timing of the notice of denial of her appeal and the review of the application by the OPERS board.

{¶ 17} The record indicates, following relator's appeal of the initial denial letter, Dr. Ferguson issued a report (on August 3, 2023) confirming his prior opinion that relator's claim should be denied, and Dr. Mast concurred with Dr. Ferguson's recommendation on August 13, 2023. Relator maintains that, while notice of denial of the appeal was issued on that date (August 13, 2023), the OPERS board did not meet to consider the medical consultant's recommendation until September 19, 2023. According to relator, the OPERS board delegated its authority to the medical examiner, and the OPERS board made an "*ex post facto*" ruling approximately one month later; relator maintains such action by OPERS constituted an abuse of discretion and denial of due process. (Relator's Objs. at 20.)

{¶ 18} In addressing relator's challenge to the procedure followed by OPERS in considering her claim, the magistrate's decision outlined the "general procedure for disability benefits" under both the "Ohio Revised Code and Ohio Administrative Code." (Appended Mag.'s Decision at ¶ 52.) More specifically, the magistrate noted that, under Adm.Code 145-2-22(H), "information obtained regarding the disabling condition becomes part of the disability record . . . available for review by the medical examiner and medical consultant." (Appended Mag.'s Decision at ¶ 52.) Further, "[p]ursuant to R.C. 145.35, in

order for an OPERS member to be granted disability benefits, OPERS's examining physician must determine the member is entitled to benefits, OPERS's medical consultant must concur with the examining physician's determination, and the OPERS board must concur with the medical consultant." (Appended Mag.'s Decision at ¶ 52.) The magistrate also noted Adm.Code 145-2-21(B)(1) "requires the OPERS member to submit a report of a physician and any supporting reports to determine his disabling condition" and that, "[a]fter the medical records are submitted to the examining physician and the OPERS medical consultant and a determination of disability is made, the member may appeal any denial of benefits under Adm.Code 145-2-23 and must submit additional objective, current medical evidence that has not been considered previously by OPERS." (Appended Mag.'s Decision at ¶ 52.)

{¶ 19} The magistrate also outlined the provisions of (1) R.C. 145.35(A) (defining the terms "[e]xamining physician" and "[m]edical consultant"), (2) Adm.Code 145-2-21(C) (providing in part "[t]he board shall review disability applications and the written recommendations of its medical consultant at its regular meetings," and that "[t]he board may approve a member's application contingent on" a medical consultant's determination "[t]he member has a disability" as defined in R.C. 145.35), and (3) Adm.Code 145-2-23 (outlining the procedures for "[d]isability appeals").

{¶ 20} Adm.Code 145-2-23(C) provides as follows:

> (1) After submission of any additional medical evidence as described in paragraph (B)(3)(d) of this rule, all evidence shall be reviewed by the medical consultant(s) who shall recommend action for concurrence by the board.
>
> (2) If the board concurs with a recommendation for approval of the appeal, disability benefits shall be paid from the date that was established when the original application for a disability benefit was filed. If a recommendation for termination of a disability benefit was appealed and the appeal is approved by the board, the payments shall be resumed from the date of termination. The member shall be notified by regular mail of the board's decision.
>
> (3) If the board concurs with a recommendation for denial of the appeal, the member shall be notified by regular mail of the board's decision and such decision shall be final.

{¶ 21} The magistrate concluded "OPERS complied with these provisions." (Appended Mag.'s Decision at ¶ 57.) Specifically, the magistrate found relator "submitted additional medical evidence to OPERS; Dr. Mast recommended denial of [relator's] appeal on August 13, 2023, and [relator] was notified on August 14, 2023, of the board's decision concurring with Dr. Mast's recommendation." (Appended Mag.'s Decision at ¶ 57.) The magistrate further found that, "[a]t the board's next meeting on September 19, 2023, the board formally denied [relator's] disability claim based upon Dr. Mast's recommendation." (Appended Mag.'s Decision at ¶ 57.)

{¶ 22} In addressing relator's contention that OPERS "notified her of the board's decision denying her disability claim prior to its September 19, 2023, meeting," the magistrate found relator "cites no rule or statute that prohibits the board from giving notice of its concurrence and denial prior to its next board meeting." (Appended Mag.'s Decision at ¶ 57.) The magistrate further determined "[a]lthough the board is required to consider an initial application at its regular meeting pursuant to Adm.Code 145-2-21, which it did here, there is no prohibition in Adm.Code 145-2-23 . . . that forbids the board from sending a notice of denial of an appeal prior to the next regular board meeting." (Appended Mag.'s Decision at ¶ 57.) Finally, the magistrate observed, "Adm.Code 145-2-21(C)(1)(a) . . . provides that the board may approve a member's application only if the medical consultant determines that the member has a disability" and, therefore, "once Dr. Mast determined that [relator] did not have a disability, the board was without authority to approve the application." (Appended Mag.'s Decision at ¶ 57.)

{¶ 23} On review, we find no error with the magistrate's determination that OPERS "issued a valid, final decision denying [relator's] appeal of her denial of disability benefits." (Appended Mag.'s Decision at ¶ 57.) As noted, relator's primary argument goes to the timing of events, i.e., OPERS notified relator of the denial of her appeal on August 14, 2023, "but the board did not meet until [September 19, 2023]." (Emphasis omitted.) (Relator's Objs. at 18.) As also observed by the magistrate, and in accordance with the relevant rule, the board was without authority to approve the application in the absence of the medical consultant's determination the member had a disability. While the sequence of events (i.e., issuance of the notice prior to the OPERS board's formal concurrence) is arguably less than desirable, we agree with the magistrate that the board's concurrence with the medical

consultant's recommendation at its next scheduled meeting resulted in a valid, final decision of the board.

{¶ 24} Relator also objects to the magistrate's determination that the decision of OPERS to deny disability benefits did not constitute an abuse of discretion. According to relator, Dr. Ferguson's "analysis fails to comprehensively consider all of [r]elator's medical conditions and supporting medical evidence." (Relator's Objs. at 26.) On review, we find no merit to this argument as the magistrate fully addressed this issue in finding there was some evidence to support the decision of OPERS.

{¶ 25} The magistrate, noting "OPERS relied upon four medical opinions by two doctors, Drs. Mast and Ferguson, in support of its initial and appeal denials," found that "Dr. Ferguson's opinions are thorough and analyze the medical evidence." (Appended Mag.'s Decision at ¶ 62, 63.) Specifically, the magistrate noted that "[i]n Dr. Ferguson's April 4, 2023, review, he indicated that he received the medical records sent to CWM by OPERS and provided a summary of [relator's] medical treatment (specifically mentioning Dr. Heather Gornik's records and Dr. Terry Wagner's Report of Physician), CT scans, surgeries, and subjective complaints." (Appended Mag.'s Decision at ¶ 63.) Further, "Dr. Ferguson indicated that [relator's] celiac saccular aneurysm was successfully coiled and has been stable since the January 16, 2022 surgery," and that relator "has not had any change in the aneurysm on follow-up CT scans." (Appended Mag.'s Decision at ¶ 63.)

{¶ 26} The magistrate also cited Dr. Gornik's note of December 6, 2022, concluding relator "was doing well post coiling," that she "has not had any flank or abdominal pain since January 2022," that her "prognosis is good," and that "her current complaints of weakness, dizziness, and supra-ventricular tachycardia are of concern but not directly related to eligible disabling diagnosis." (Appended Mag.'s Decision at ¶ 63.) The magistrate noted Dr. Ferguson "then concluded that [relator] had no current symptoms or disability from the previously coiled celiac aneurysm, and she is not disabled from that condition." (Appended Mag.'s Decision at ¶ 63.)

{¶ 27} The magistrate also addressed Dr. Ferguson's follow-up report of August 3, 2023, in which the examining physician "noted his receipt and review of the medical records sent to CWM by OPERS, summarized medical evidence, and confirmed his prior opinion that the claim should be denied because [relator] has no current symptoms or

disability from the previously coiled celiac aneurysm." (Appended Mag.'s Decision at ¶ 63.) In that report, Dr. Ferguson indicated "the FCA [Functional Capacity Assessment] concluded that [relator] was limited to light work; however, the current complaints of weakness, dizziness, and supra-ventricular tachycardia are of concern but not caused by her successfully stabled coiled celiac aneurysm, which is her only eligible diagnosis." (Appended Mag.'s Decision at ¶ 63.) Finding it was "clear from Dr. Ferguson's reports that he analyzed the medical evidence he relied upon," and that he "also addressed some of [relator's] subjective complaints and explained that several of them are concerning but not related to" the "only eligible diagnosis," the magistrate concluded that "Dr. Ferguson's initial report and follow-up report upon appeal provided some evidence for OPERS to deny [relator's] disability claim." (Appended Mag.'s Decision at ¶ 63.)

{¶ 28} Here, the record reflects OPERS relied on the medical reports and opinions of Drs. Ferguson and Mast, and we agree with the magistrate's determination that Dr. Ferguson's initial and follow-up reports, which included his opinion that relator had no current symptoms or disability from the previously coiled celiac aneurysm and that she was not disabled by the primary disabling condition, provided OPERS some evidence to deny the disability claim. Relator points to her attending physician's discussion of post-COVID-19 issues, i.e., dizziness, fatigue, and brain fog. As noted by the magistrate, however, Dr. Ferguson addressed those issues, finding "the current complaints of weakness, dizziness, and supra-ventricular tachycardia are of concern but not caused by her successfully stabled coiled aneurysm, which is her only eligible diagnosis." (C.R. at 1136.) Under Ohio law, "OPERS 'does not abuse its discretion by accepting the opinion of its reviewing physician over that of the claimant's treating physician.' " *Powell*, 2021-Ohio-4030, at ¶ 17, quoting *State ex rel. Woodman v. Ohio Pub. Emps. Retirement Sys.*, 2015-Ohio-3807, ¶ 18. Further, with respect to reviews by OPERS's medical consultant, " 'a medical expert's file review can constitute "some evidence" supporting the denial of disability compensation,' " and " '[t]he medical opinion expressed, when drawn from a review of all the evidence, is itself *some* evidence that the board can rely on in reaching a decision.' " (Emphasis in original.) *Id.*, quoting *State ex rel. Wegman v. Ohio Police & Fire Pension Fund*, 2018-Ohio-4243, ¶ 18.

{¶ 29} On review, we agree with the magistrate's determinations there was some evidence to support the decision of OPERS to deny the application for disability benefits, and that relator is not entitled to a writ of mandamus. Accordingly, OPERS did not abuse its discretion in denying the application. Based on the foregoing, we overrule relator's objections to the magistrate's decision.

{¶ 30} Having overruled relator's objections and based on this court's independent review of the record and an examination of the magistrate's decision, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's recommendation, the requested writ of mandamus is denied.

*Objections overruled*;
*writ of mandamus denied.*

DORRIAN and BOGGS, JJ., concur.

———————

<u>APPENDIX</u>

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Julia Phillips, | : | |
| Relator, | : | |
| v. | : | No. 23AP-606 |
| Ohio Public Employees Retirement System of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondent. | : | |
| | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on February 12, 2025

*Malyuk McDaniel Kasper*, *LLC*, *Eric McDaniel*, and *Matthew Kasper*, for relator.

*Dave Yost*, Attorney General, *Henrique A*. Geigel, and *Lisa A. Reid*, for respondent.

IN MANDAMUS

{¶ 31} Relator, Julia Phillips ("claimant"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Ohio Public Employees Retirement System of Ohio ("OPERS"), to vacate its order denying disability benefits and to issue an order granting claimant's disability benefits.

Findings of Fact:

{¶ 32} 1. On January 8, 2022, claimant suffered a celiac saccular aneurysm while employed by Stow Municipal Court with the job title of "case scheduling."

{¶ 33} 2. Stow Municipal Court employees participate in the OPERS retirement system.

{¶ 34} 3. Subsequently, claimant received treatment from several providers, including Terry Wagner, D.O.; Emil Hayek, M.D.; Jillian Sinopoli, D.O.; Heather Gornik, M.D.; Ivan Cakulev, M.D.

{¶ 35} 4. A June 2022 MRA of claimant's brain revealed the intracranial vessels demonstrated a segmental area of diminished MRA signal along a proximal M2 branch of the right middle cerebral artery, raising the possibility of artifact versus segmental narrowing.

{¶ 36} 5. An August 2022 chest CT revealed a mass in the right cardiophrenic space, similar to a prior study.

{¶ 37} 6. On January 25, 2023, claimant filed an application for disability benefits with OPERS.

{¶ 38} 7. On February 15, 2023, Dr. Wagner completed a Report of Physician form, opining that claimant was permanently disabled from celiac saccular aneurysm dissection that began on January 15, 2022.

{¶ 39} 8. OPERS sent claimant's medical records to its third-party administrator for disability cases, UMass Chan Medical School ("Commonwealth Medicine" or "CWM") for a medical review by its "examining physician" under R.C. 145.35(A)(1), Robert Ferguson, M.D. In an April 4, 2023, review, Dr. Ferguson found claimant had no current symptoms or disability from the previously coiled celiac aneurysm, and she is not disabled from that condition. Dr. Ferguson recommended that OPERS deny claimant's application. Dr. Ferguson also indicated that he received the medical records sent to CWM by OPERS and provided a summary of claimant's medical treatment (specifically mentioning Dr. Gornik's records and Dr. Wagner's Report of Physician), CT scans, surgeries, and subjective complaints. Dr. Ferguson indicated that claimant's celiac saccular aneurysm was successfully coiled and has been stable since the January 16, 2022, surgery; claimant has not had any change in the aneurysm on follow-up CT scans; Dr. Gornik's December 6, 2022, note concluded claimant was doing well post coiling; claimant has not had any flank or abdominal pain since January 2022; claimant's prognosis is good; and her current

complaints of weakness, dizziness, and supra-ventricular tachycardia are of concern but not directly related to eligible disabling diagnosis.

{¶ 40} 9. Although claimant disputes some of the facts surrounding the denial of disability claim, on April 19, 2023, the OPERS board ("board") denied the claim, finding she was not considered permanently disabled from the performance of her duty as "case scheduling." OPERS's medical consultant under R.C. 145.35(A)(2), Maurice Mast, M.D., concurred with Dr. Ferguson's recommendation to disapprove claimant's disability benefits. Claimant appealed the denial.

{¶ 41} 10. According to both claimant and OPERS, on May 16, 2023, the board concurred with OPERS's denial at its next-scheduled public meeting, as referenced in the board minutes.

{¶ 42} 11. On June 7, 2023, claimant underwent a functional capacity assessment ("FCA") at Lake Health, and the FCA report of the same date indicated the following: (1) claimant exhibited full effort, rendering the evaluation valid for her physical capabilities; and (2) claimant could participate in a 7-hour workday, with the following restrictions: (a) sitting 4 to 6 hours for 60-minute durations; (b) standing/walking 3 to 4 hours; (c) occasional lifting, pushing, pulling, and carrying; (d) frequent simple grasping; and (e) occasional firm grasping.

{¶ 43} 12. In a July 21, 2023, opinion letter, Dr. Wagner stated the following: (1) for the past year, claimant has continued to suffer from fatigue, dizziness, tachycardia; (2) a mediastinal mass was discovered during the celiac aneurysm dissection workup; and (3) all of these issues continue to cause weakness, fatigue, dizziness, and anxiety affecting her failing routine and making it difficult for her to return to her previous baseline.

{¶ 44} 13. In a July 21, 2023, Report of Physician form, Dr. Wagner again opined that claimant was permanently and totally disabled from celiac saccular aneurysm dissection that began on January 15, 2022, and noted agreement with the FCA.

{¶ 45} 14. On July 24, 2023, claimant, in support of her appeal of the board's denial of her claim, submitted an affidavit, updated report of employer, additional medical records and opinions, and the FCA.

{¶ 46} 15. OPERS forwarded the appeal documents to CWM and Dr. Ferguson for a new medical review. In an August 3, 2023, report, Dr. Ferguson noted his receipt and

review of the medical records sent to CWM by OPERS, summarized medical evidence, and confirmed his prior opinion that the claim should be denied because claimant has no current symptoms or disability from the previously coiled celiac aneurysm. Dr. Ferguson indicated that the FCA concluded claimant was limited to light work; however, the current complaints of weakness, dizziness, and supra-ventricular tachycardia are of concern but not caused by her successfully stabled coiled aneurysm, which is her only eligible diagnosis.

{¶ 47} 16. Although claimant again disputes some of the facts surrounding the board's appeal denial, Dr. Mast concurred with Dr. Ferguson's recommendation on August 13, 2023, and OPERS denied claimant's appeal on August 14, 2023. According to both claimant and OPERS, the board adopted the physicians' final recommendation at its next board meeting on September 19, 2023, as referenced in the board minutes.

{¶ 48} 17. On October 9, 2023, claimant filed the present petition for writ of mandamus.

Conclusions of Law and Discussion:

{¶ 49} The magistrate recommends that this court deny claimant's request for a writ of mandamus.

{¶ 50} To prevail on his mandamus claim, relator must establish, by clear and convincing evidence: (1) a clear legal right to the requested relief; (2) a clear legal duty on the part of OPERS to provide that relief; and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Domhoff v. Ohio Pub. Emps. Retirement Sys. Bd.*, 2014-Ohio-3688, ¶ 13. This requires that relator demonstrate that OPERS abused its discretion by making a decision that was not supported by some evidence. *State ex rel. Willer v. Ohio Pub. Emps. Retirement Sys.*, 2021-Ohio-4575, ¶ 12 (10th Dist.). An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable. *State ex rel. Ewart v. State Teachers Ret. Sys. Bd. of Ohio,* 2020-Ohio-4147, ¶ 24 (10th Dist.).

{¶ 51} In mandamus, courts will not second-guess the medical expertise of the doctor whose report is under review. *State ex rel. Smith v. Ohio Pub. Emps. Retirement Sys.*, 2016-Ohio-2731 (10th Dist.) (magistrate's decision), citing *State ex rel. Young v. Indus. Comm.*, 1997-Ohio-162. The evaluation of the weight and credibility of the evidence before it rests exclusively with OPERS. *Id.*, citing *State ex rel. Thomas v. Indus. Comm.*, 42

Ohio St.3d 31, 33 (1989), citing *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987).

{¶ 52} The general procedure for disability benefits is set forth in the Ohio Revised Code and Ohio Administrative Code. Adm.Code 145-2-22(H), entitled "[r]eceipt of disability benefits," provides, in pertinent part, that information obtained regarding the disabling condition becomes part of the disability record that is available for review by the medical examiner and medical consultant. Pursuant to R.C. 145.35, in order for an OPERS member to be granted disability benefits, OPERS's examining physician must determine the member is entitled to benefits, OPERS's medical consultant must concur with the examining physician's determination, and the OPERS board must concur with the medical consultant. Adm.Code 145-2-21(B)(1) requires the OPERS member to submit a report of a physician and any supporting reports to determine his disabling condition. After the medical records are submitted to the examining physician and the OPERS medical consultant and a determination of disability is made, the member may appeal any denial of benefits under Adm.Code 145-2-23 and must submit additional objective, current medical evidence that has not been considered previously by OPERS.

{¶ 53} In the present case, claimant first argues that OPERS has not issued a valid, final decision and, therefore, failed to adhere to statutory and administrative code requirements, arguing as follows: (1) while the file contains F-33 board recommendations, which correspond to the denial letters, these were only signed by Dr. Mast; (2) the board's meetings during the relevant period were only on July 18 to 19 and September 19 to 20, 2023; (3) claimant appealed her case on July 28, 2023, with Dr. Ferguson giving his opinion on August 3, 2023; (4) the F-33 board recommendation was on August 13, 2023; (5) the final decision was issued on August 14, 2023; (6) no board meeting occurred between claimant's appeal and the claimed final decision; (7) thus, the board did not review the file, let alone Dr. Ferguson's report; and (8) a single individual's opinion (Dr. Mast's) does not constitute a board decision.

{¶ 54} However, claimant has failed to demonstrate that OPERS's procedure violated any statute or rule. R.C. 145.35(A) provides, in pertinent part, the following:

> (A) As used in this section and sections 145.362 and 145.363
> of the Revised Code:

(1) "Examining physician" means a physician appointed by the public employees retirement board to conduct a medical examination of a disability benefit applicant or recipient.

(2) "Medical consultant" means a physician appointed by the board to review a member's application for a disability benefit or an appeal of a denial or termination of a benefit.

{¶ 55} Adm.Code 145-2-21, entitled "Application for a disability benefit," provides the following:

(C) The board shall review disability applications and the written recommendations of its medical consultant at its regular meetings. The determination by the board on any application is final.

The board may approve a member's application contingent on the following conditions.

(1) The medical consultant determines that:

(a) The member has a disability as defined in section 145.35 of the Revised Code and this rule.

{¶ 56} Adm.Code 145-2-23, entitled "Disability appeals," provides the following:

(1) After submission of any additional medical evidence as described in paragraph (B)(3)(d) of this rule, all evidence shall be reviewed by the medical consultant(s) who shall recommend action for concurrence by the board.

(2) If the board concurs with a recommendation for approval of the appeal, disability benefits shall be paid from the date that was established when the original application for a disability benefit was filed. If a recommendation for termination of a disability benefit was appealed and the appeal is approved by the board, the payments shall be resumed from the date of termination. The member shall be notified by regular mail of the board's decision.

(3) If the board concurs with a recommendation for denial of the appeal, the member shall be notified by regular mail of the board's decision and such decision shall be final.

{¶ 57} Here, OPERS complied with these provisions. Claimant submitted additional medical evidence to OPERS; Dr. Mast recommended denial of claimant's appeal on August 13, 2023, and claimant was notified on August 14, 2023, of the board's decision

concurring with Dr. Mast's recommendation. At the board's next meeting on September 19, 2023, the board formally denied claimant's disability claim based upon Dr. Mast's recommendation. Although claimant complains that OPERS notified her of the board's decision denying her disability claim prior to its September 19, 2023, meeting, claimant can point to no statute or regulation that indicates OPERS's procedure used here is prohibited. Claimant cites no rule or statute that prohibits the board from giving notice of its concurrence and denial prior to its next board meeting. Although the board is required to consider an initial application at its regular meeting pursuant to Adm.Code 145-2-21, which it did here, there is no prohibition in Adm.Code 145-2-23, which specifically governs disability appeals, that forbids the board from sending a notice of denial of an appeal prior to the next regular board meeting. Furthermore, Adm.Code 145-2-21(C)(1)(a), which applies to the initial application of disability benefits, provides that the board may approve a member's application only if the medical consultant determines that the member has a disability; thus, once Dr. Mast determined that claimant did not have a disability, the board was without authority to approve the application. For these reasons, the magistrate finds that OPERS issued a valid, final decision denying claimant's appeal of her denial of disability benefits.

{¶ 58} Claimant next argues that OPERS did not provide all relevant documentation to its medical reviewer, and its medical reviewer did not review all relevant documentation; therefore, OPERS failed to adhere to the statutory and administrative code requirements. Referencing the requirement in Adm.Code 145-2-23(C)(1) that "all" evidence shall be reviewed by the medical consultant, who shall recommend action for concurrence by the board, claimant contends that OPERS's certified record does not provide any proof that it provided all 814 pages of records to Dr. Ferguson. Claimant points to the fact that Dr. Ferguson's final review added only two additional paragraphs addressing Dr. Wagner's new DR-APS form and Lake Health's FCA and failed to reference or discuss the other additional medical records claimant submitted on appeal. In sum, claimant asserts that OPERS abused its discretion when it failed to show this court that it has complied with the requirement of giving the medical reviewer "all evidence" pursuant to Adm.Code 145-2-23(C)(1).

{¶ 59} Claimant's argument fails for two reasons. First, claimant has failed to show that OPERS failed to forward all medical evidence to the medical reviewer, Dr. Ferguson, or that Dr. Ferguson did not review all relevant documentation. Although claimant asserts that OPERS's certified record does not provide any proof that it provided all of the evidence to Dr. Ferguson, claimant fails to point to any statute or rule that requires OPERS to provide proof that it forwarded the medical record to the medical reviewer. Furthermore, claimant's assertion that the fact that Dr. Ferguson's final review added only two additional paragraphs, despite claimant's submitting additional records, shows that Dr. Ferguson did not review the additional records is without support. Again, claimant can point to no authority that the medical reviewer must list all additional evidence received or necessarily comment on the additional evidence. There is simply nothing that requires what claimant complains of here. Second, the magistrate notes that Adm.Code 145-2-23(C)(1), which claimant relies upon to argue that OPERS failed to show proof that it forwarded the entire medical record to Dr. Ferguson and that Dr. Ferguson failed to show proof that it reviewed the entire medical record, only requires that "all evidence shall be reviewed by the medical consultant(s) who shall recommend action for concurrence by the board." Here, Dr. Mast is the "medical consultant" and Dr. Ferguson is the "examining physician." Thus, the "all evidence" requirement in this section applies only to the medical consultant. For these reasons, claimant's argument, in this respect, fails.

{¶ 60} Claimant next argues that OPERS violated his due-process rights, relying upon his first two arguments that OPERS failed to give the medical reviewer all of the medical records and failed to have the board review the file and issue a final decision. However, as we have found claimant's first two arguments without merit, claimant's due-process argument must also fail.

{¶ 61} Finally, claimant argues that OPERS's decision to deny disability benefits was unreasonable and arbitrary. In support, claimant asserts the following: (1) OPERS's reliance upon Dr. Ferguson's review was in error because there is no evidence regarding what records Dr. Ferguson received for his review; (2) although Dr. Ferguson's April 4 and August 3, 2023, opinions found that claimant has no current symptoms or disability, and there is insufficient objective evidence of permanent disability, Dr. Ferguson failed to analyze what medical evidence he relied upon and how it accounted for the disabling

conditions claimant was suffering from, while dismissing the conclusions of disability found in the June 2022 MRA of claimant's brain, the August 2022 CT scan, and the June 2023 FCE; and (3) Dr. Ferguson did not account for or ignored many of the subjective complaints noted in the record, such as claimant's complaints of fatigue, heart palpitations, and rapid heart rate with spikes of tachycardia, which showed she did not fully recover.

{¶ 62} Claimant's arguments are without merit. At its core, claimant's argument is whether there existed some evidence to support OPERS's denial of disability benefits. OPERS relied upon four medical opinions by two doctors, Drs. Mast and Ferguson, in support of its initial and appeal denials, and the magistrate finds claimant's attack on Dr. Ferguson's medical reviews and opinions do not undermine OPERS's reliance upon Dr. Ferguson's reports. Initially, even if claimant believes Dr. Ferguson's opinions suffered from deficiencies, OPERS still could have relied upon Dr. Mast's conclusions to provide some evidence to support its denial of the claim. Furthermore, the magistrate has already found that neither OPERS nor Dr. Ferguson were under any duty to list all of the evidence received or reviewed. In addition, much of claimant's argument is that there existed medical evidence in the record contrary to Dr. Ferguson's opinions. However, it is well established that the existence of contrary evidence is immaterial if there is evidence in support of the retirement system board's findings of fact. *State ex rel. Sanderlin v. State Teachers Retirement Sys.*, 2022-Ohio-2032 (10th Dist.), citing *State ex rel. Kolcinko v. Ohio Police & Fire Pension Fund*, 2012-Ohio-46, ¶ 9.

{¶ 63} Notwithstanding the preceding findings, claimant's arguments challenging Dr. Ferguson's review are not persuasive. Dr. Ferguson's opinions are thorough and analyze the medical evidence. In Dr. Ferguson's April 4, 2023, review, he indicated that he received the medical records sent to CWM by OPERS and provided a summary of claimant's medical treatment (specifically mentioning Dr. Gornik's records and Dr. Wagner's Report of Physician), CT scans, surgeries, and subjective complaints. Dr. Ferguson indicated that claimant's celiac saccular aneurysm was successfully coiled and has been stable since the January 16, 2022, surgery; claimant has not had any change in the aneurysm on follow-up CT scans; Dr. Gornik's December 6, 2022, note concluded claimant was doing well post coiling; claimant has not had any flank or abdominal pain since January 2022; claimant's prognosis is good; and her current complaints of weakness, dizziness, and supra-

ventricular tachycardia are of concern but not directly related to eligible disabling diagnosis. Dr. Ferguson then concluded that claimant had no current symptoms or disability from the previously coiled celiac aneurysm, and she is not disabled from that condition. In Dr. Ferguson's August 3, 2023, report completed in contemplation of claimant's appeal, Dr. Ferguson noted his receipt and review of the medical records sent to CWM by OPERS, summarized medical evidence, and confirmed his prior opinion that the claim should be denied because she has no current symptoms or disability from the previously coiled celiac aneurysm. Dr. Ferguson indicated that the FCA concluded that claimant was limited to light work; however, the current complaints of weakness, dizziness, and supra-ventricular tachycardia are of concern but not caused by her successfully stabled coiled celiac aneurysm, which is her only eligible diagnosis. Therefore, it is clear from Dr. Ferguson's reports that he analyzed the medical evidence he relied upon, and he was under no duty to explain why he disagreed with the conclusions of other medical providers. Dr. Ferguson also addressed some of claimant's subjective complaints and explained that several of them are concerning but not related to his only eligible diagnosis. For the foregoing reasons, the magistrate finds that Dr. Ferguson's initial report and follow-up report upon appeal provided some evidence for OPERS to deny claimant's disability claim.

{¶ 64} Accordingly, it is the magistrate's recommendation that this court should deny claimant's request for a writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.